UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) C.A. No. 10-6 |
| | ) U.S.D.C. No. 08-cr-134 |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) **REPLY RE APPELLANT'S** |
| | ) **MOTION FOR ACCESS** |
| ALEJANDRO UMAÑA, | ) |
| | ) |
| Defendant-Appellant. | ) |
| _____ | ) |

## INTRODUCTION

Two questions must be answered to resolve the matters raised by the motion here. First:

> Nine court-filed documents and four sealed hearing transcripts—the "heightened need" items—have been identified by Mr. Umaña's appellate counsel as being particularly likely to contain material relevant to his position on appeal. If they do, they undisputedly constitute part of the "record on appeal" under Rule 10. No substantive reason (security-related or otherwise) has been identified to justify preventing counsel from reviewing the documents prior to filing the opening brief on appeal. Should the Court act expeditiously to grant access to these thirteen items?

And second:

> Whose role is it to scour the record[1] for issues favoring the defendant's appeal: the district court's or defense counsel's?

---

[1] Specifically, the items identified in Rule 10(a)(1) and (2) such as "the original papers and exhibits filed in the district court" and "the transcripts of proceedings."

1

As to the first question, the government does not seriously dispute Mr. Umaña's position here, except to suggest that this Court may lack authority to grant the request. As to the second, the thrust of the government's argument is that it is the role of the district court to serve as the gatekeeper to the appeal by (1) screening record items sought by defense counsel in order to "focus the appeal" and (2) weighing the relative importance of information contained in sought-after record items to "fact-bound [appellate] arguments" like prosecutorial misconduct and *Giglio* issues before deciding what to release to defense counsel. Doc. 83 at 9, 10. The government's arguments are unpersuasive.

## DISCUSSION

### A.   The thirteen "heightened need" items

At the outset, it is important to note that the government does not appear to seriously oppose the limited release of the thirteen "heightened need" items.[2] In all its briefing on the topic, the government has not offered a single substantive reason to prevent defense counsel from accessing these items. It has never contended that counsel's access would injure any interest in safety or privacy; nor does it claim that release would somehow unfairly prejudice its appellate strategy or any other substantive interest. To the contrary, it concedes that "protective measures like those

---

[2] These consist of nine court-filed documents and four hearing transcripts from the very case Mr. Umaña is appealing, No. 08cr134. *See* Doc. 81 at 8-9.

2

put into place by the district court" are adequate. Response at 15. Thus, to put the status of the matter succinctly: It is undisputed that no one will be harmed by granting this aspect of the motion.

Where the government addresses the specific request, it does not comment on the propriety of defense counsel's *review* of the documents. Instead, it engages in an attempt to pre-litigate issues it anticipates will be raised in the opening brief. *See* Response at 9-12 (positing arguments it thinks "Defendant may challenge" on appeal and asserting facts it believes relevant to such arguments). Mr. Umaña does not intend to respond to the substance of these contentions, except to say that he does not agree with the government's characterizations about the factual bases or their relevance to the appeal.  This is not the proper forum for this—the time to argue the issues will come soon enough, *see* Fed. R. App. P. 28(a)(9) & (b) (arguments belong in the briefs)—and Mr. Umaña declines the government's invitation to saddle this Court with needless prelitigation.

In a similar vein, Mr. Umaña declines the government's invitation to further "identif[y] concretely" what potential issues his review of the record has yielded so far. *See* Response at 10.[3] In essence, this asks defense counsel to reveal the products

---

[3]The government states that Mr. Umaña has "assur[ed]" the Court that counsel have found "new assignments of error." This is not quite correct. At this point, it can only be (and has only been) said with assurance that the materials have generated material *potentially* helpful to the appeal.  *See* Doc. 81 at 14.

3

of their legal research and mental processes at this point in time. But to do so would be to expose protected attorney work product. Revealing counsel's thought process to date—any more than has already been done—risks prejudicing the appeal, improperly invades the work product doctrine, and serves no legitimate purpose.

To the extent that the government presents any legal opposition to the focused request, it suggests that this Court may lack the authority to grant the motion under Rule 10. *See* Response at 9. This contention is obviously incorrect for two reasons. First, as explained in the Motion, Rule 10 expressly contemplates that the Court will resolve disputes about the content of the record on appeal; if it is to do so, it obviously must employ some mechanism to enable the documents to be reviewed, and under Supreme Court law, that review has to be conducted in the first instance by the advocate for the defendant. *See* Motion, Doc. 81 at 9-13. Thus, to carry out its record-defining role under Rule 10, the Court must be able to order access to be granted to Mr. Umaña's attorneys. Second, regardless of the authority under Rule 10, the government concedes that another source of authority—the Court's inherent authority to manage its docket—enables it to "grant this request." Response at 1.

In sum, there is no good reason to continue to deny defense counsel access to the "heightened need" documents. Certainly, the government's "docket management" arguments cannot possibly pertain to the thirteen "heightened need" items. And even

4

the government concedes that Mr. Umaña satisfied the district court's procedural requirement as to the "heightened need" documents—and adherence to the district court's procedures is the primary basis for its opposition here. *See* Response at 6-7 ("[A] 'plausible' explanation is really all that the district court asked for, and none has been provided *except as to the 'heightened need' documents*.") (emphasis added). Access should be ordered forthwith.

**B.     The rest of the requested documents**

Mr. Umaña's request for the rest of the documents currently inaccessible to his appellate counsel was based on three main principles: (1) they constitute part of the "record on appeal" as that term is used in Rule 10 because they were filed in Case No. 08-cr-134, *see* Motion at 10; (2) they are presumptively publicly accessible under the First Amendment as court filed documents in a federal criminal case and that presumption has not been overcome, *id.* at 17-19; and (3) it is necessary for counsel to review the documents to safeguard Mr. Umaña's Sixth Amendment right to effective assistance on direct appeal, *id.* at 12-13, 19-20.  The government has not disputed his first two points; its arguments on the third are premised on the plainly incorrect notion that it is the district court's function to screen defense access to record materials—many of which, in this case, the government is privy to—in order to "focus the appeal." Response at 9.

5

The first two points should be considered effectively conceded. Mr. Umaña explicitly urged the Court to adopt a bright-line rule that regards all material filed in Case No. 08-cr-134 as "presumptively part of the record on appeal" and grant access on that basis. *See* Motion at 10. The government offers no arguments to the contrary.

As to the First Amendment right to access, the government does not contest its applicability, but says only in a footnote that the right is not "absolute" and not "inconsistent with the process the district court employed here." Response at 8 n.4. But this simply is not so. The government neglects to mention the point Mr. Umaña has consistently raised—that the presumption to open access has not been overcome here; the necessary particularized findings have never been alleged, let alone made. *See* Motion at 17-18 (enumerating requirements to overcome presumption of access set forth *Press Enterprise v. Superior Court*, 478 U.S. 1, 12 (1986)). To deny access without complying with *Press Enterprise*—as the district court did—most certainly is inconsistent with the First Amendment.[4]

As to the Sixth Amendment interests compelling review in the first instance by defense counsel, the government takes a straw man approach. Mr. Umaña's point was that it is the role of defense counsel, not the government or the district court to review

---

[4] It seems highly doubtful that the district court's ruling would withstand appellate scrutiny on the First Amendment issue were this request made by a media entity. To deny it here—where the interest of the party seeking access is that much greater—would turn logic on its head.

6

the record in search of possible support for his appeal—and the cases he cited support that point. *See* Motion at 12-13, 19-20 (under *Ellis v. United States*, 356 U.S. 674 (1958), *Anders v. California*, 386 U.S. 738 (1967), *Hardy v. United States*, 375 U.S. 277 (1964), and *Entsminger v. Iowa*, 386 U.S. 748 (1967), defense counsel must conduct a searching review of the record; he may not leave that review to the court lest he become mere "amicus curiae" instead of an active "advocate" for the defendant). The government, though, attacks what it calls the "tacit suggestion" that "courts have little role to play in the process" and suggests that the materials Mr. Umaña seeks is a potentially boundless "inquiry into the government's entire MS-13 investigation." Response at 7-8. This is neither here nor there. It omits—critically—the fact that Mr. Umaña is seeking only *court-filed* materials and hearings in his own case.

Though apparently reluctant to say so explicitly, implicit in the government's arguments is the notion that the district court is the arbiter of what belongs in an appeal. *See* Response at 9, 10 (arguing that "the district court is well-equipped" to consider which record materials support "fact-bound arguments" in the appeal). It hardly needs to be repeated that this is incorrect. The district court should no more serve as the gatekeeper to Mr. Umaña's appeal, *see* Motion at 12-13, than it should serve as the gatekeeper to this Court's ability to resolve record issues under Rule 10

7

or exercise its inherent authority to facilitate the litigation of this appeal.

This is not pretrial discovery—though, from reading the government's motion, one might understandably be confused. *See* Response at 3-4, 6-7 (advocating the use of procedures applicable to pretrial discovery). The *Brady/Giglio* pretrial discovery procedures referenced here are designed to protect the government from being overly burdened by the need to review information gathered in the course of—as the Response calls it— "the government's entire MS-13 investigation." *See Monroe v. Angelone*, 323 F.3d 286, 316 (4th Cir. 2003). This concern is, of course, entirely absent here because the request is (and such Rule 10 requests always will be) limited in scope to court-filed materials in Mr. Umaña's case; it does not encompass all information gathered by the government in its investigation.

For similar reasons, the government's contention that the Court should apply appellate-review-like deference to this motion misses the mark. *See* Response at 2-4. It is neither necessary nor appropriate for this Court to defer, as the government would have it, to the district court's *legal* approach on a matter arising under rules governing the procedures within the province of *this* Court. *See* Fed. R. App. P. 10 (all record matters other than disputes over what actually happened in district court to be resolved by the Court of Appeals). The government's concern with the district court's "docket management" issues is thus inapposite; it is also overblown.

8

Tellingly, the district court itself has not invoked "docket management" concerns as a basis for denying Mr. Umaña's request. In any event, any such concerns can easily be addressed by allowing adequate time for disclosure. As indicated, it is the "heightened need" documents that counsel desire most expeditiously, and Mr. Umaña is aware that the Court's recent extension order was its last and final one.

### C. The "timing and volume" of the request

Finally, a brief word about the "timing and volume" of the request. The government repeatedly invokes this concept as though these factors cut *against* Mr. Umaña's request. *See* Response at 13 (complaining about the "breadth endlessness of" Mr. Umaña's still-unfulfilled request for access to court-filed documents in his own case), 14 (suggesting that the "timing and volume of the request" weigh against Mr. Umaña); *see also id.* at 5 n.2.[5]

They do not. As to timing, defense counsel's efforts to secure access to the complete record below have been ongoing since at least January of this year, shortly after undersigned counsel Vince Brunkow took over as counsel of record in this case upon the abrupt departure of his predecessor, Steven Hubachek. This history has

---

[5] The government's suggestions in footnote 2 of its Response are not well taken, and its assertions about counsel's diligence in seeking documents from trial counsel and co-defendants' counsel are false. The only part of the remarks that are true are that counsel have not asked co-defendants' counsel for the documents. But it makes no sense to do so because the sought-after documents are under seal; co-defendants' counsel would have to violate a court order to provide them.

9

been explained multiple times before, a point the government neglects to mention. *See, e.g.*, Doc. 71 at 3-4 (extension motion filed March 6, 2013). These efforts have been nothing if not appropriate and diligent; Mr. Umaña thus joins the government's lament at the apparently "endlessness" of the pursuit. *See* Resp. at 13. This has gone on long enough. Appellate counsel should be permitted to view the proceedings and documents filed in Mr. Umaña's own case.

As to volume, the government complains about the "breadth" of the request and quips that the motion can be reduced to the phrase "we need everything." *Id.* at 13, 14. Its second point is (almost) spot-on: We do need everything—everything filed in Case No. 08cr134. It is that limitation—the fact of filing in Mr. Umaña's case—that governs the volume of the request. This is not something Mr. Umaña or any of his counsel have control over. It is the *government* that is responsible for the "breadth" and "volume" of the documents; it was the one that decided to charge twenty-six defendants in one indictment, giving itself the ability to introduce evidence of sixty-eight mostly unrelated overt acts. *See* DC Doc. 623 at 13-25 (overt acts a - ppp).

## CONCLUSION

For all the reasons set forth here and in the Motion, the motion should be granted.

Respectfully submitted,

*/s/ Vincent J. Brunkow*
Date: July 2, 2013  **VINCENT J. BRUNKOW**
225 Broadway, Suite 900
San Diego, California  92101-5030
Telephone:  (619) 234-8467
Attorneys for Defendant-Appellant

*/s/ Malcom R. Hunter*
**MALCOM RAY HUNTER, JR.**
201 West Main Street, Suite 300
Durham North Carolina 27701
Telephone:  (919) 956-9545

## CERTIFICATE OF SERVICE

I hereby certify that I cause the foregoing to be filed via the Court's CM/ECF system, which will send notice of such filing to Adam Christopher Morris at usancw.appeals@usdoj.gov.

This 2nd day of July, 2013.

/s/ Vincent J. Brunkow
Vincent J. Brunkow